TATE, Judge.
An administrative agency rejected the claimant’s application for unemployment compensation, holding that he was disqualified because he had voluntarily left his employment without good cause. By this suit the claimant seeks judicial review of the administrative agency’s denial of unemployment compensation. Impleaded as co-defendants are the agency’s administrator and the claimant’s former employer.
The plaintiff appeals from District Court judgment affirming such denial of unemployment compensation benefits.
The claimant seeks judicial review of the agency determination of disqualification. Under LSA-R.S. 23:1634, the administrative findings of facts are conclusive on the courts in their judicial review, if supported by sufficient evidence; the jurisdiction of the courts is normally confined to questions of law. Since the facts are essentially un-contradicted in the instant case, the question before the court is simply whether under these facts the claimant is or is not disqualified as a matter of law. See, e. g., Turner v. Brown, La.App. 3 Cir., 134 So.2d 384, and the cases therein cited.
The agency determined that the claimant was not entitled to -unemployment benefits because of the disqualification set forth by LSA-R.S. 23:1601(1), which provides: “An individual shall be disqualified for benefits : (1) If the administrator finds that he has left his employment without good cause connected with his employment. * * * »
The claimant was hurt on the job and was disabled for several months thereafter. When he recovered, he applied for unemployment compensation benefits. The agency denied the claim on the ground that the claimant had abandoned his job because, upon his recovery, he had not first contacted his former employer to see if his job was still available.
The facts show the following:
The claimant was injured at work in August, 1962. He retained an attorney to represent him in his claim for workmen’s compensation benefits, his employer refusing to concede he was injured on the job. However, after investigation, the employer’s insurer entered into a lump sum compromise of $750 with the claimant on December 18th, 1962, in which the only issue was the length of disability, and in which there was no dispute as to the accident at work. As of November 27th, an attending orthopedist felt that the claimant would be unable to return to work for a month or two; the claimant testified without con *326 tradiction that, following the settlement, he continued to secure further treatment from Charity Hospital. The plaintiff applied for unemployment compensation benefits in May of 1963, when he felt he could return to work without residual difficulty from his previous moderately severe back strain.
The claimant frankly admitted he did not contact his former employer upon his recovery. He felt it to be useless to attempt to get his old job back, since he and his employer had parted on bad terms (due to his assertion of the workmen’s compensation claim) and since he had heard from a worker in the neighborhood that the employer would not hire him back.
Although this latter hearsay report might not have been sufficient reason in itself for the claimant not to contact his employer to see if his job was still open, the employer in fact frankly admitted that he had cut his work force from six to four men since the claimant’s injury, and that, although he “might have” hired the claimant back after his recovery “if he had done right”, he felt the claimant had not treated him fairly by going to a lawyer, Tr. 32. Thus, the claimant was not incorrect in his statement that there was no use in his reapplying for work, because his employer had “hard feelings toward me”, Tr. 34. (Other exhibits and statements in the evidence also show that the employer resented the employee’s hiring a lawyer to represent him when the employer’s insurer made no effort to contact the claimant following his report of the work injury.)
Both the agency hearing and the judicial review of it in the trial court proceeded on the theory that the claimant was barred from unemployment benefits as a matter of law unless he had first applied to his old employer to see if his job was still available to him. This principle of law was deduced from our decision in Prenell v. Brown, 130 So.2d 520, 524, which stated:
“Ordinarily, where an employee leaves his employment because of a temporary disability with the expectation of alter returning to work, he is required to give a timely notice to his employer or otherwise manifest an intention not to abandon his employment. An employee who neglects to take such precautions to guard his job as a reasonably prudent person would take, and who is not permitted to return to his work in consequence thereof, is not entitled to unemployment compensation.” (Italics ours.)
This is a correct statement of the law applicable “where an employee leaves his employment because of a temporary disability with the expectation of later returning to work.” In the Prenell case, an employee was held not to be disqualified for “misconduct”, LSA-R.S. 23:1601(2), where he did not report to work on the day following an industrial injury, without having first notified his employer that he was going to take the day off for medical reasons. We held that the fact of the industrial injury and the claimant’s probable absence was known to his foreman, so that the claimant’s failure to specifically inform his employer of his contemplated absence the next day did not constitute “misconduct” sufficient to deprive him of unemployment compensation benefits.
If, for instance, the claimant’s conduct consisted of repeated absences, without pri- or notification, for non-workconnected illness, such might have constituted disqualifying misconduct. January v. Administrator, La.App. 3 Cir., 155 So.2d 250; Green v. Brown, La.App. 3 Cir., 136 So.2d 147. Likewise, if an employee absents himself from work for non-workconnected cause and for an extended period of time, without any attempt to notify his employer of his unavoidable absence and thus to safeguard his job, the employee may be considered to have abandoned his job without good cause connected with his employment. Gladson v. Brown, La.App. 3 Cir., 134 So.2d 660.
The present circumstances, however, present a different type-situation than that in *327 the decisions relied upon by the agency and by the appellees herein. Here, the employee was hurt on the job, the employer knew the reason for the absence over an extended period of disability, and it cannot be said that the employee left his work, in the disqualifying phrase, “without good cause connected with his employment”, LSA-R.S. 23:1601(1).
This is in fact exactly what our brothers of the Second Circuit held in Deese v. Brown, La.App. 2 Cir., 161 So.2d 108, and Walker v. Brown, La.App. 2 Cir., 160 So.2d 258, certiorari denied. Cf., also Turner v. Brown, La.App. 3 Cir., 155 So.2d 276.
These Second Circuit decisions are not in conflict with our decision in Prenell, as suggested by the appellees. Prenell considered the type-situation where an employee was temporarily absent from work and was discharged for alleged misconduct because he did not first inform his employer that he would be absent the day following an on-the-job injury. On the other hand, the Second Circuit decisions as does the present case, concerned the type-situation where the employment was actually terminated because of an on-the-job injury. In this event, under the plain statutory terms, the claimant is not disqualified, for his employment was terminated for cause connected with such employment— i. e., an on-the-job injury.
Prenell noted that a claimant’s failure to inquire into the availability of his former job is not, under the jurisprudence, a condition precedent to eligibility for unemployment compensation benefits, 130 So.2d 520, citing Broussard v. Administrator, La.App. 1 Cir., 121 So.2d 268, a case which we find has facts similar to the present. Pre-nell also noted that an employee is only required, in order to avoid disqualification for unemployment benefits, “to take such precautions to guard his job as a reasonably prudent person would take”, 130 So.2d 524.
We should also mention Barber v. Lake Charles Pipe and Supply Co., La.App. 3 Cir., 148 So.2d 326, 327. In that case, an employee sustained an on-the-job injury, but the claimant’s employment was not terminated for that reason. (When the claimant attempted to return to work, the employer contended that the claimant had abandoned his job because he had not contacted his employer as soon as he was medically able to return to work but instead had waited some six weeks before doing so. We held that the claimant was not disqualified from receiving unemployment benefits, for the facts showed that the claimant had reapplied as soon as he was medically discharged and that the employer of course had notice of the reason for the absence as due to a work-caused injury.)
Returning to the present facts, we think the evidence indicates clearly that the claimant’s employment was terminated at or soon after the time he left it because of an on-the-job injury. The employer had hostile feelings because of the claimant’s asserting a workmen’s compensation claim for his undoubted disability, and the employer frankly admitted that he would not have re-employed the claimant, since the latter had hired a lawyer to protect his disputed rights arising from his injury on the job.
Further, if the employment had not actually been terminated, then, as was stated in Broussard v. Administrator, cited above, under very similar facts, 121 So.2d 271:
“Even if a claimant may normally be (as the Board felt) under a duty to inquire of his employer whether his former job is still available to him upon his recovery from disability, we cannot agree that such inquiry is a condition precedent to eligibility for unemployment compensation benefits under the circumstances shown by this record, * * * where the employer had evidenced a pronounced hostility to the claimant, indicating that an application for reinstatement would be a vain and useless ceremony. Cf., Division of Employment Security *328 Policy and Precedent Guide 8 (La.1955) : ‘The pertinent consideration is whether or not the worker acted reasonably in quitting work, having in mind such general factors as policy and what the normal worker would have done under the same circumstance,’ * *
For the reasons assigned, the judgment appealed from is annulled and set aside, and the case is remanded to the Board of Review, Division of Employment Security, Department of Labor, State of Louisiana, for further proceedings in accordance with our decision herein.
Reversed and remanded.